## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **JIM R. TRAMEL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No.: _____** |
| ) | **JURY DEMAND** |
| ) | |
| **RUTHERFORD SHERIFF'S DEPARTMENT,** ) | |
| **ROBERT ARNOLD, RUTHERFORD COUNY** ) | |
| **SHERIFF, AND RUTHERFORD COUNTY,** ) | |
| **TENNESSEE,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Comes now your Plaintiff, Jim R. Tramel, and as facts in support of his cause of action would show unto this Honorable Court as follows:

### I. JURISDICTION AND VENUE

1.     This is a civil action for damages brought pursuant to 40 U.S.C. § 1983 as a consequence of deprivations under color of law of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.  Plaintiff also asserts a statutory claim pursuant to the Public Employee Political Freedom Act of 1980 ("PEPFA") at T.C.A. §8-50-601, et seq., for which this Court has supplemental jurisdiction.

2.     This Court has proper jurisdiction pursuant to 28 U.S.C. §1331 and §1343. Venue is proper pursuant to 28 U.S.C. §1391(b).

1

3.     This Court has proper supplemental jurisdiction of the Plaintiff's statutory Public Employee Political Freedom Act claim pursuant to 28 U.S.C. §1368 because this state law claim is so related to the Constitutional claim for which this Court has original jurisdiction that a state claim forms part of the same case or controversy.

## II. PARTIES

4.     The Plaintiff is a citizen and resident of Rutherford County, Tennessee, and has been at all times pertinent to the facts of this cause.

5.     Defendant Rutherford County is a governmental entity and a political subdivision of the State of Tennessee.    Defendant Rutherford County Sheriff's Department is a Department/Division of Defendant Rutherford County, Tennessee.

6.     Defendant Robert Arnold is a resident of Rutherford County, Tennessee, and has been at all times pertinent to the facts of this cause.

7.     Defendant Arnold was acting as an agent of the Rutherford County Sheriff's Department and Rutherford County, Tennessee, at all times pertinent to the facts of this cause.

8.     Defendant Arnold is being sued individually and in his official capacity of Sheriff of Rutherford County, Tennessee.

## III. FACTS

9.     The Plaintiff was hired by the Rutherford County Sheriff's Department on or about December 16, 1997, by former Rutherford County Sheriff Truman Jones.

10.    The Plaintiff began his employment with the Rutherford County Sheriff's Department as a patrol deputy, then as a School Resource Officer, and in April 0f 2006, he was promoted to the position of Detective within the Criminal Investigations Division. The Plaintiff held the position of General Detective in the Criminal Investigations Division until he was

2

terminated on June 14, 2013. The Plaintiff was not a policy maker within the Rutherford County Sheriff's Department.

11.     Defendant Arnold was elected Sheriff of Rutherford County in a contested election in 2010.

12.     Throughout his tenure in the Criminal Investigations Division, Plaintiff Detective Tramel did not have any disciplinary actions nor any job related complaints.

13.     While working in the Criminal Investigations Division, Plaintiff Detective Tramel did receive special recognition including commendations. Specifically, in 2008 the Plaintiff received commendations for solving a twenty-five (25) year old cold case murder investigation; in 2010 for an arrest in a case of robbery, kidnapping, aggravated burglary, and car-jacking; and on March 15, 2013, Detective Tramel received a "Commendation for Excellence" from Defendant Sheriff Arnold for his "Outstanding Performance" during the investigation of stolen property within Rutherford County.

14.     As of the Spring of 2013, Plaintiff Detective Tramel was a member in good standing in the Criminal Investigations Division of the Rutherford County Sheriff's Department.

15.     On Monday morning, May 13, 2013, Plaintiff Detective Tramel was ordered by his Commander, Major Bill Sharp, to report to the private office of Defendant Sheriff Arnold at the Rutherford County Sheriff's Department. Plaintiff Detective Tramel followed the order of his Commander, and presented himself at the private office of Defendant Sheriff Arnold. The meeting to which Plaintiff Detective Tramel was ordered to attend with Sheriff Arnold was not related to business of the Rutherford County Sheriff's Department and was not related to any type of investigation being performed by Plaintiff Detective Tramel. Rather, after entering the private office of Defendant Sheriff Arnold, Plaintiff Detective Tramel was questioned by

3

Defendant Sheriff Arnold regarding "the rumors" Defendant Sheriff Arnold had heard concerning Plaintiff Detective Tramel running against Defendant Sheriff Arnold for the position of Sheriff of Rutherford County in the upcoming 2014 election. After being questioned by Defendant Sheriff Arnold, Plaintiff Detective Tramel confirmed that "the rumors" were true, and that Plaintiff Detective Tramel was indeed planning to run for the position of Rutherford County Sheriff in 2014. The meeting in the Defendant Sheriff Arnold's private office lasted approximately one-half hour during which time Defendant Sheriff Arnold and Plaintiff Detective Tramel discussed politics, including the budget for the Sheriff's Department. During that Monday morning meeting which Plaintiff Detective Tramel was ordered to attend by his Commander, Defendant Sheriff Arnold advised Plaintiff Detective Tramel that he had already raised over $40,000.00 at a shrimp boil, that his supporters (both Democrat and Republican) were solid for him, and Defendant Sheriff Arnold even presented to Plaintiff Detective Tramel one of his re-election signs which he kept in his office. Defendant Sheriff Arnold made it clear at this unsolicited meeting that Defendant Arnold had plenty of campaign money, plenty of political support, already had election signs printed, and that he intended to win the political race. At the conclusion of the meeting, Plaintiff Detective Tramel felt that his continued employment with the Rutherford County Sheriff's Department was in jeopardy because he honestly confirmed to Defendant Sheriff Arnold that he was planning to run for Sheriff in 2014.

16. On Tuesday, May 14, 2013, Sergeant Dan Goodwin of the Criminal Investigations Division contacted Plaintiff Detective Tramel and advised him that he was to report to the office of Deputy Chief Randy Garrett. Plaintiff Detective Tramel took the telephone call from Sergeant Goodwin as a direct order and reported to the office of Deputy Chief Garrett at the Rutherford County Sheriff's Department. Upon entering Chief Garrett's

4

office, Plaintiff Detective Tramel was questioned as to whether or not he had a tape recording device on him. Chief Garrett was demanding and even became intimidating in his questioning of the Plaintiff several times as to whether or not he was wearing a recording device. Plaintiff Detective Tramel handed his cellular telephone to Chief Garrett, and then questioned Chief Garrett about why the Chief was so concerned as to whether or not Plaintiff Detective Tramel had a recording device with him. After taking custody of Plaintiff Detective Tramel's telephone, Chief Garrett advised Plaintiff Detective Tramel that Defendant Sheriff Arnold wanted to meet with him again in his private office. At that point, Plaintiff Detective Tramel believed that he was about to be fired based upon the conversation from the previous day that he was running for Sheriff in 2014. Plaintiff Detective Tramel then met with Defendant Sheriff Arnold who questioned Plaintiff Detective Tramel regarding information inquired about by the local news media that Defendant Sheriff Arnold's cousin had been re-arrested. Then, Defendant Sheriff Arnold advised Plaintiff Detective Tramel that if Plaintiff Detective Tramel did indeed run against Defendant Sheriff Arnold in the political election for 2014, that Plaintiff Detective Tramel would no longer be employed at the Rutherford County Sheriff's Department. Defendant Sheriff Arnold told Plaintiff Detective Tramel that he would be assigned to another Department within the County. Defendant Sheriff Arnold advised Plaintiff Detective Tramel that Rutherford County Mayor Ernest Burgess would decide which Department Plaintiff Detective Tramel would be transferred to, but he made it clear that the Plaintiff would be reassigned out of the Rutherford County Sheriff's Department and law enforcement. Plaintiff Detective Tramel protested any transfer out of the Rutherford County Sheriff's Department, and assured Defendant Sheriff Arnold that he would not campaign on the job and would keep politics out of the office. Defendant Sheriff Arnold made it clear to Plaintiff Detective Tramel during that meeting that

5

Plaintiff Detective Tramel's law enforcement career with the Rutherford County Sheriff's Department would end if Plaintiff Detective Tramel followed through with his plans to run for the political office of Rutherford County Sheriff in 2014.

17.     During the meeting with Defendant Sheriff Arnold on Tuesday, May 14, 2013, another detective within the Criminal Investigations Division, Ralph Mayercik, was summoned to Defendant Sheriff Arnold's private office by Chief Garrett. Detective Mayercik had expressed some interest in running for the political position of Rutherford County Sheriff in 2014. In the presence of Plaintiff Detective Tramel, Defendant Sheriff Arnold told Detective Mayercik that if he (Detective Mayercik) runs for Rutherford County Sheriff against Sheriff Arnold, that Detective Mayercik would no longer be employed at the Rutherford County Sheriff's Department and would be reassigned to another Department within Rutherford County. Defendant Sheriff Arnold then made a statement that the election "was going to be a battle", and that he would not have any employees of the Rutherford County Sheriff's Department running against him for the political office of Sheriff. At the conclusion of the Tuesday morning meeting on May 14, 2013, it was clear to Plaintiff Detective Tramel that his employment with the Rutherford County Sheriff's Department was in jeopardy because of his decision to run for the political office of Sheriff.

18.     On Wednesday, May 15, 2013, Plaintiff Detective Tramel became ill due to the stress of the meetings on the two (2) previous days with Defendant Sheriff Arnold and with the direct threats to his continued employment with the Rutherford County Sheriff's Department. Plaintiff Detective Tramel was unable to report to his duties on that day due to sickness, and took a medical leave day. On that date, Plaintiff Detective Tramel contacted Rutherford County Mayor Burgess and advised Mayor Burgess of the meetings he was ordered to attend with

6

Defendant Sheriff Arnold on Monday and Tuesday of that week. Plaintiff Detective Tramel informed Mayor Burgess that he intended to run for the political position of Sheriff of Rutherford County, and that Defendant Sheriff Arnold had advised Plaintiff Detective Tramel that if he did, that he would be transferred out of law enforcement at the Sheriff's Department and that Mayor Burgess would reassign Plaintiff Detective Tramel somewhere else within the County. Mayor Burgess responded to Plaintiff Detective Tramel that he had not discussed that scenario with Defendant Sheriff Arnold. Mayor Burgess advised Plaintiff Detective Tramel that he could not guarantee Plaintiff Detective Tramel a job elsewhere within Rutherford County. Mayor Burgess advised Plaintiff Detective Tramel to continue performing his duties as a Criminal Investigator which was the intent of Plaintiff Detective Tramel.

19.     Plaintiff Detective Tramel was on a previously scheduled vacation from the Rutherford County Sheriff's Department from May 24, 2013 through June 1, 2013. Upon returning to the Sheriff's Department on Monday, June 3, 2013, Plaintiff Detective Tramel was summoned to the office of one of his supervisors, Captain David Hailey. During that meeting which was initially attended by another detective from the Criminal Investigations Division, departmental issues were discussed regarding the "on call" activities of the prior weekend. After discussion of departmental issues, the other detective was dismissed from the meeting, but Plaintiff Detective Tramel was ordered to stay in the Captain's office. Then, Captain Hailey began chastising Plaintiff Detective Tramel stating that his attitude had changed, that he had heard rumors from other officers that Plaintiff Detective Tramel was no longer a team player, was only working from 8:00 a.m. to 4:00 p.m., would not promptly respond to telephone calls, and that it was being said around the Department that Plaintiff Detective Tramel would not "do anything extra anymore". The Captain complained to Plaintiff Detective Tramel that he "doesn't

hang out with us" anymore. In response, Plaintiff Detective Tramel denied the rumors. The Captain did not reveal the source of those rumors. In further response, Plaintiff Detective Tramel stated that since they were discussing rumors, Plaintiff Detective Tramel had heard rumors about the Captain regarding issues from a Christmas party six (6) months ago, and another issue a few years ago, to which the Captain promptly denied both rumors. Plaintiff Detective Tramel confirmed to his Captain that he did not believe either of the rumors either when he heard them, and that his point was you should not believe everything you hear. The Captain inquired from Plaintiff Detective Tramel the source of the rumors about the Captain, and Plaintiff Detective Tramel advised that he could not remember who had made the statements because it had been several months ago. The Captain advised Plaintiff Detective Tramel that he also had heard those rumors, and had previously addressed them, and there was nothing to them. Plaintiff Detective Tramel confirmed with the Captain that he did not take the rumors seriously when he heard them, but that he wanted to make the point that you should not believe everything you hear at the Sheriff's Department. Prior to the meeting with Captain Hailey on Monday, June 3, 2013, the first day Plaintiff Detective Tramel returned from vacation, no one in his Division had addressed any problems regarding his job performance, attitude, or any issue related to his job, including supervisors. When the meeting with Captain Hailey concluded on Monday morning, June 3, 2013, Plaintiff Detective Tramel thought that the issues with his Captain were resolved, but the Plaintiff was concerned that for the first time, issues were being raised regarding his job performance. This job criticism was in direct retaliation for the Plaintiff's confirmation that he was running for the political office of Sheriff just three (3) weeks earlier.

20.     Unbeknownst to Plaintiff Detective Tramel, within a week of Plaintiff Detective Tramel contacting Rutherford County Mayor Burgess, an internal affairs investigation was

8

ordered regarding Plaintiff Detective Tramel. In the fifteen and one-half (15 ½) years Plaintiff Detective Tramel had been employed by the Rutherford County Sheriff's Department, there had never been an internal affairs investigation against him. Lieutenant Nathan Pagel of the Office of Professional Responsibility of the Rutherford County Sheriff's Department, was instructed to investigate Plaintiff Detective Tramel, and particularly his meeting with a Smyrna Police Detective in early May 2013. On Tuesday, June 4, 2013, the second day after returning to the Sheriff's Department from a scheduled vacation which began on May 24 and ended on June 1, 2013, Lieutenant Pagel advised the Plaintiff of an internal affairs investigation against him which included an interview of the Smyrna Police Detective. The investigation by Internal Affairs Officer Lieutenant Pagel confirmed that Plaintiff Detective Tramel did not disparage Sheriff Arnold personally, and there was nothing inappropriate about his meeting with the Smyrna Police Detective. During Lieutenant Pagel's internal affairs interrogation of Plaintiff Detective Tramel regarding his meeting with the Smyrna Police Detective, Lieutenant Pagel advised Plaintiff Detective Tramel that "there is a big old target on you." This statement by Lieutenant Pagel was in direct reference to Plaintiff Detective Tramel's acknowledgement to Defendant Sheriff Arnold that he was running for the political position of Sheriff of Rutherford County in 2014, which resulted in an internal affairs investigation of him. The internal affairs investigation was in retaliation for the Plaintiff confirming that he was a candidate for Sheriff.

21. The next day, Wednesday, June 5, 2013, Plaintiff Detective Tramel was again summoned to his supervisor's office for a meeting. On this date, he was called in by Major Sharp, with Captain Hailey present, and questioned about the rumors he had heard months ago regarding Captain Hailey which had been discussed on Monday. Plaintiff Detective Tramel told Major Sharp that he could not remember who had made the comments about Captain Hailey, that

9

it was months ago, and that he did not believe the rumors anyway. At that point, Commander Sharp called another individual into his office and told the other employee about the remark Plaintiff Detective Tramel made to Captain Hailey the previous day. This employee again wanted to know who had made the statement months ago, and Plaintiff Detective Tramel advised he could not remember. At that point, Major Sharp told Plaintiff Detective Tramel that this "was a dead issue" and that it was not to be discussed again outside of his office. Major Sharp went further and stated that if anyone talked about these rumors or this incident outside of his office after that day, they would be fired. Major Sharp never discussed with Plaintiff Detective Tramel any problems, complaints, or issues Plaintiff Detective Tramel was allegedly having with his co-workers, supervisors, citizens, or otherwise during that meeting or at any other time. The meeting with Major Sharp was intimidating and in retaliation for the Plaintiff confirming that he was a candidate for Sheriff in 2014.

22. The following day, on Thursday, June 6, 2013, Major Sharp advised Plaintiff Detective Tramel that he had informed Chief Garrett of the remarks made by Plaintiff Detective Tramel to Captain Hailey on Monday. Plaintiff Detective Tramel responded that he thought it was "a dead issue". Major Sharp, at that point, advised Plaintiff Detective Tramel that it was not over, and Plaintiff Detective Tramel was ordered to prepare a written statement to Chief Garrett as to what happened in the conversation between Plaintiff Detective Tramel and Captain Hailey on Monday. Plaintiff Detective Tramel followed the orders of his Major and prepared a written statement. In his written statement, Plaintiff Detective Tramel again explained that during the meeting he was ordered to attend with Captain Hailey, Captain Hailey advised Plaintiff Detective Tramel that he had heard things about Plaintiff Detective Tramel by other officers, and that Plaintiff Detective Tramel responded that he also had heard remarks by other officers against

Captain Hailey. In his written statement, Plaintiff Detective Tramel made it clear why he responded to Captain Hailey, and stated: "I did not believe the rumors and only addressed it when he said what others were saying of me." Plaintiff Detective Tramel completed and submitted his report to Major Sharp at approximately 11:45 a.m. on June 6, 2013. On that same date at approximately 4:00 p.m., Major Sharp summoned Plaintiff Detective Tramel back to his office and handed him a set of documents in which Major Sharp recommended that Plaintiff Detective Tramel be transferred out of the Criminal Investigations Division. Attached hereto as Exhibit 1 is a two-page document titled "Rutherford County Sheriff's Office Report of Action", dated June 6, 2013, advising that disciplinary action was being taken against Plaintiff Detective Tramel and that he was being transferred to another Division for "failure to maintain satisfactory and harmonious working relationship with fellow employees." The second page of the document is signed by reporting supervisor, William Sharp, and dated "6,6,13". Plaintiff Detective Tramel signed the document indicating that he understood that he could appeal, and that the appeal of the recommendation for transfer must be within five (5) days. Plaintiff Detective Tramel signed and dated "6-6-13". Also, on the second page, the signature of Division Commander, Bill Sharp, is included with the future date of "6/13/13", with confirmation that Commander Sharp concurs with the recommendation of the transfer. Division Commander Sharp dated his recommendation a week later, June 13, 2013, even though the documents were presented to Plaintiff Detective Tramel on June 6th. After reviewing the documents in Exhibit 1, Plaintiff Detective Tramel questioned Major Sharp as to why he was being transferred, and he received no response. Plaintiff Detective Tramel then left the Sheriff's Department. The disciplinary action and transfer of the Plaintiff was in retaliation for confirming to Defendant Sheriff Arnold that he was running for the political office of Sheriff.

11

23.     Later on June 6, 2013, at approximately 5:00 p.m., Plaintiff Detective Tramel was contacted at home by a supervisor and ordered to return to the Sheriff's Department. Plaintiff Detective Tramel complied with the order from a supervising officer and returned to the Sheriff's office. Upon returning to the Sheriff's Department, Plaintiff Detective Tramel was handed another document, attached hereto as Exhibit 2, with the same "Report of Action" indicating a disciplinary action which included a transfer to another Department, but with a change on the second page with a hand-written statement indicating a "violation of SOP NO 617" signed by Chief Randy Garrett and dated "6/6/13", with the additional signatures of Deputy Chief Virgil Gammon, dated "06/06/2013" in which he disagreed with the recommendation with a hand-written notation of "termination" followed by the hand-written signature of Chief Deputy Randy Garrett, dated "6/6/13" in which he agreed with the recommendation of transfer to another Department. Plaintiff Detective Tramel was asked if he wanted to sign the document again at the bottom, and he declined since he had already signed the form when it was initially given to him. However, Plaintiff Detective Tramel was advised that he was now being terminated which was inconsistent with the documents he was provided. No further explanation was given to him. Plaintiff Detective Tramel was humiliated, embarrassed, and angered by the events of that day, but did not argue with his Commanding Officer. His Major then told him he must surrender his commission card, badge, weapon, and detective's vehicle immediately. The Major then ordered two (2) fellow detectives of the Plaintiff to follow Plaintiff Detective Tramel to his home where all of his law enforcement and Sheriff's Department items were taken from him, including his vehicle. The termination of the Plaintiff was in retaliation for confirming to Defendant Sheriff Arnold that he was running for the political office of Sheriff approximately thirty (30) days earlier.

24.     In reviewing the documents, it appeared that two (2) of the Commanding Officers had concurred with the recommendation of transfer, and the Deputy Chief did not concur with the recommendation and indicated "no termination". However, the Major told the Plaintiff that he was being fired. During the meeting on the evening of June 6, 2013, when he was handed the second document, Plaintiff Detective Tramel was advised that he would receive further documents regarding his termination. The Plaintiff believed he would receive the additional documents from the Sheriff's Office and that those documents would better explain his termination and include an amended "Report of Action" form recommending termination. While the Plaintiff was told that he would have five (5) days to appeal, Plaintiff Detective Tramel believed he would have five (5) days after he received the remaining and amended documents. Plaintiff Detective Tramel believed any appeal would be fruitless as he knew he was being terminated because he confirmed to Defendant Arnold that he was running for Sheriff four (4) weeks earlier. Plaintiff Detective Tramel did not receive any additional documents from the Rutherford County Sheriff's Office until Friday, June 14, 2013.

25.     On Friday, June 7, 2013, Plaintiff Detective Tramel contacted Rutherford County Mayor Burgess and advised that he had been terminated by the Sheriff's Department, just as he had predicted when he contacted the Mayor's office three (3) weeks earlier.

26.     On Monday, June 10, 2013, Plaintiff Detective Tramel went to the Human Resources Department of Defendant Rutherford County and requested documentation regarding his termination from the Sheriff's Department. Personnel from the Human Resources Department contacted the Defendant Rutherford County Sheriff's Department and was advised that the paperwork was not complete.

13

27.     On Thursday, June 13, 2013, a private meeting was held with Rutherford County's eight (8) Constitutional Officers, including Defendant Sheriff Arnold, at the County Attorney's office, with Rutherford County Human Resource Director Sonya Stevenson and Deputy to the Mayor, Jeff Davison also attending.  The purpose of the meeting was to discuss issues regarding whether or not Constitutional Officers could terminate employees who decided to run against them, such as the Plaintiff.  After that meeting, Defendant Sheriff Arnold stated that while he cannot fire someone for running against him or for other political reasons, he can terminate an employee if that employee is bad-mouthing the Sheriff in public.  Defendant Sheriff Arnold was obviously referring to the termination of the Plaintiff, even though the Plaintiff did not "bad mouth" Defendant Arnold.

28.     On Friday, June 14, 2013, a letter was hand delivered to Plaintiff Detective Tramel signed by Defendant Sheriff Arnold advising that he was being terminated for violation of Standard Operating Procedure No. 617.  Included with the hand delivered letter on June 14, 2013, was a Separation Notice confirming Plaintiff Detective Tramel's termination and page 2 of the Report of Action now signed by Defendant Sheriff Robert Arnold and dated "6/14/13 at 14:06". (Attached hereto as Exhibit 3 are copies of these three (3) additional documents).  The documents delivered to Plaintiff Detective Tramel on June 14, 2013, did not contain a "Rutherford County Sheriff's Office Report of Action" form indicating that Plaintiff Detective Tramel was being terminated.  The only "Report of Action" form ever provided to Plaintiff Detective Tramel, which is page 1 of the two-page set of documents attached as Exhibit 2, indicates that he was being transferred to another Department.  Plaintiff Detective Tramel did not receive any documents regarding his termination from June 6, 2013, until June 14, 2013.

14

29.     Even though Plaintiff Detective Tramel did not have any disciplinary actions taken against him in his fifteen and one-half (15 ½) years of employment with the Rutherford County Sheriff's Department, and even though he had been commended for his excellent work as a law enforcement detective as late as March 2013, within approximately thirty (30) days of him confirming to Defendant Sheriff Arnold that he was going to run for the political position of Sheriff of Rutherford County in 2014, Plaintiff Detective Tramel was terminated.

30.     Even though an internal affairs investigation was ordered regarding Plaintiff Detective Tramel's conversation with a Smyrna Police Department Detective which led to a finding of no violation of the standards of professional conduct for Plaintiff Detective Tramel and no disciplinary action, an internal affairs investigation was not ordered and did not occur regarding allegations that Plaintiff Detective Tramel failed to maintain satisfactory and harmonious working relationships with fellow employees or that Plaintiff Detective Tramel violated SOP No. 617.

31.     Defendant Rutherford County Sheriff's Department's Standard Operating Procedure (SOP) No. 302 outlines the process to be taken by the Sheriff's Department regarding "disciplinary investigations of employees."   The Defendant Rutherford County Sheriff's Department, in its efforts to quickly terminate Plaintiff Detective Tramel, violated Rutherford County Sheriff's office Standard Operating Procedure No. 302.  According to the Defendants, Plaintiff Detective Tramel was terminated for violation of Sheriff's Department Standard Operating Procedure No. 617: "Discrimination and Harassment."   However, Plaintiff Detective Tramel was never advised that any co-worker had accused him of discrimination or harassment.

32.    There is no record of an employee of the Defendant Rutherford County Sheriff's Department accusing Plaintiff Detective Tramel of discrimination or harassment through the filing of an Action Report.

33.    The allegations made by the Defendants alleging that Plaintiff Detective Tramel was guilty of violation of the Discrimination and Harassment policy in the Sheriff's Department are false, and made as merely a pre-text for the actual reason the Plaintiff was terminated.

34.    Plaintiff Detective Tramel did not make any statements regarding rumors he had heard regarding Captain Hailey to any person other than Captain Hailey himself, and the context of that conversation was that Plaintiff Detective Tramel was being confronted by Captain Hailey with rumors which were unfounded so Plaintiff Detective Tramel responded with rumors he had heard about Captain Hailey.  Any remarks made to other employees within the Defendant Sheriff's Department were made by either Captain Hailey or Major Sharp.

35.    The Discipline Policy of Defendant Rutherford County allows for discipline to include verbal counseling, written warning, transfer to another division, demotion, suspension with pay, and suspension without pay prior to termination.  The Plaintiff was given the most severe discipline, termination, even though this was his first disciplinary event as an employee of the Defendant Rutherford County Sheriff's Department in fifteen and one-half (15 ½) years.

36.    Prior to the Plaintiff's termination, he had never been disciplined in any way by his employer since the date of hire by the Rutherford County Sheriff's Department.

## IV. CAUSES OF ACTION

**Count 1: Violation of the Plaintiff's Constitutional Rights**

37.     The Plaintiff hereby asserts a claim pursuant to 42 U.S.C. §1983 alleging the Defendants violated his First and Fourteenth Amendment rights by terminating him based upon his political speech and his confirmation to Defendant Sheriff Arnold that he was going to run against Sheriff Arnold for the political position of Sheriff of Rutherford County in 2014.

38.     At all times relevant to this litigation, while the Plaintiff was employed by Defendant Rutherford County Sheriff's Department, he worked in a non-policy making position, and this continued to be true through the date of his termination by Defendant Sheriff Arnold.

39.     Plaintiff's termination by Defendant Sheriff Arnold was solely because he honestly answered the question posed to him by Defendant Sheriff Arnold when he was asked if he was going to run against Defendant Arnold for the political position of Sheriff in the 2014 election.

40.     Alternatively, Plaintiff submits that his termination by Defendant was motivated in substantial part by his confirmation to Defendant Sheriff Arnold that the Plaintiff intended to run for the political position of Sheriff of Rutherford County in the 2014 election.

41.     By honestly answering Defendant Sheriff Arnold's question as to whether the Plaintiff intended to run for Sheriff in 2014 against Defendant Sheriff Arnold, the Plaintiff engaged in conduct and speech that was protected by the First Amendment to the United States Constitution.

42.     Termination of the Plaintiff by the Defendants constitutes conduct which is sufficient to deter a person of ordinary firmness from continuing to engage in political activity of the type engaged in by the Plaintiff.

17

43.     The Plaintiff's engaging in constitutionally protected conduct and speech was, at a minimum, a "substantial or motivating factor" in the Defendants' decision to terminate the Plaintiff.

44.     The Plaintiff's having engaged in constitutionally protected political activity, as stated previously herein, constitutes the "but for" cause for his termination.

45.     Defendant Arnold was acting under color of state law at the time he terminated Plaintiff which was approximately thirty-one (31) days after Defendant Arnold confronted the Plaintiff about the Plaintiff running against him for the position of Sheriff in 2014.

46.     Plaintiff's termination by Defendant Arnold was accomplished pursuant to local government policy or custom, which constitutes the cause in fact of Plaintiff's constitutional deprivation.

47.     On information and belief, Plaintiff submits that Defendant Rutherford County, Tennessee, over an extended period of years, has been deliberately indifferent to political patronage hirings and firings by Sheriffs and other state constitutional office holders such as the termination of the Plaintiff as described herein.

48.     The First Amendment to the United States Constitution protects the Plaintiff's freedom to advance his political beliefs by running for the elected position of Sheriff of Rutherford County.

49.     The Fourteenth Amendment to the United States Constitution prevents the Defendants from infringing upon the Plaintiff's right to run for political office, and the conduct of Defendant Arnold in terminating the Plaintiff's employment in his capacity as an officer of the State of Tennessee violated the Plaintiff's rights.

18

50.     The termination of the Plaintiff was inconsistent with the custom and practices of discipline of employees at the Rutherford County Sheriff's Department, and the severe punishment was in direct retaliation of the Plaintiff's exercise of the First Amendment right to free speech.

51.     As a direct and proximate result of the unlawful termination of the Plaintiff by the Defendants, the Plaintiff has lost back pay, front pay, the value of lost employment benefits, has suffered humiliation and embarrassment, has suffered mental pain and suffering, mental anguish, and damage to his reputation.

52.     The Plaintiff requests that he be reinstated to the position he held before he was unlawfully terminated by the Defendants, with pay and all benefits being reinstated as though he was never terminated.   Alternatively, if his employment is not reinstated, Plaintiff seeks an award for front pay along with an award of attorney's fees and litigation expenses, in addition to an award of back pay, pay for lost benefits and damages for humiliation and embarrassment, pain and suffering, mental anguish and pre-judgment interest.   Plaintiff also seeks an award of attorney's fees, pursuant to 42 U.S.C. §1986(b) and an award of expert witness fees, pursuant to 42 U.S.C. §1988(c).

**Count 2: Plaintiff's Claim for Punitive Damages Against Defendant Arnold**

53.     Prior to terminating the Plaintiff on June 14, 2013, Defendant Arnold had been employed as a law enforcement officer with the Rutherford County Sheriff's Department, successfully ran a campaign for Sheriff of Rutherford County, and had been made aware of the policy against firing employees for political purposes.

19

54.     Prior to the termination of the Plaintiff on June 14, 2013, Defendant Arnold either knew or should have known that Plaintiff's political activities and his political speech were protected by the First Amendment to the United States Constitution.

55.     Defendant Arnold's termination of the Plaintiff was willful and with the intent to violate the Plaintiff's civil rights.

56.     Alternatively, Defendant Arnold's termination of the Plaintiff was done with reckless and/or callous indifference to the Plaintiff's federally protected constitutional rights.

57.     The United States Supreme Court in <u>Routon v. Republican Party of Illinois</u>, 497 U.S. 62 (1990), established that adverse employment actions based in whole or in substantial part on political affiliation or support are impermissible infringements on public employees' First Amendment rights, and further that conditioning hiring or employment retention decisions on political belief and association violates the First Amendment rights of current or prospective employees.

**Count 3: Public Employee Political Freedom Act**

58.     The Plaintiff's exercise of his right to communicate with elected public officials was a substantial or motivating factor in the retaliation suffered by him.

59.     The Defendants' unlawfully disciplined and terminated Plaintiff Detective Tramel in violation of the Public Employee Political Freedom Act of 1980 ("PEPFA") at T.C.A. §8-50-601, et seq.

60.     As a result of the Defendants' violation of PEPFA, the Plaintiff is entitled to an award of compensatory and treble damages in an amount to be proven at trial.

## V: PRAYER FOR RELIEF

WHEREFORE, your Plaintiff prays for the following relief:

1.      That he be awarded compensatory damages against the Defendants, individually, jointly, and severally, for back pay, the value of lost employment benefits, humiliation and embarrassment, mental pain and suffering, mental anguish, and pre-judgment interest;

2.      That he be immediately reinstated to the position he held until he was unlawfully terminated with pay and all benefits being reinstated as though he was never terminated;

3.      That alternatively, if his employment is not reinstated, Plaintiff seeks an award for front pay along with an award for attorney fees and litigation expenses in addition to an award of back pay, value of lost benefits in the past and in the future, and damages for humiliation and embarrassment, pain and suffering, mental anguish and pre-judgment interest;

4.      That Plaintiff seeks an award for attorney fees pursuant to 42 U.S.C. §1986(b) and an award for expert witness fees, pursuant to 42 U.S.C. §1988(c);

5.      That Plaintiff seeks an award of punitive damages against the Defendant Arnold, individually, plus pre-judgment interest, and that said award of punitive damages be in addition to other damages as awarded;

6.      That the Plaintiff receive an award of compensatory and treble damages in an amount to be proven at trial for the Defendants' violations of PEPFA;

7.      That Plaintiff requests a jury to try his causes of action; and

8.      That Plaintiff requests an award of such other and further legal and equitable relief as may be appropriate.

Respectfully submitted,

_____
Terry A. Fann (TN Bar No. 12968)
**Waldron, Fann & Parsley**
tfann@bellsouth.net
202 West Main Street
Murfreesboro, TN 37130
(615)890-7365


_____
Benjamin L. Parsley, III (TN Bar No. 26888)
**Waldron, Fann & Parsley**
Bpars3@comcast.net
202 West Main Street
Murfreesboro, TN 37130
(615)890-7365

# RUTHERFORD COUNTY SHERIFF'S OFFICE

# REPORT OF ACTION

Date of Incident: June 6, 2013        Date of Report: June 6, 2013

Employee Name: Jim Tramel        Rank: Det.    Division: CID

## TYPE OF REPORT

Letter of Commendation ☐    Letter of Instruction ☐    Promotion ☐    Disciplinary ☑    Other ☐

New Hire ☐    Resignation ☐    Allowed to Rehire - Yes ☐    No ☐

Verbal Counseling ☐    Written Warning ☐    Transfer To Another Division ☑    Demotion ☐

Suspension With Pay ☐    Suspension Without Pay ☐    Termination ☐

*[Recommendations concerning promotions/transfers to another division, demotion, suspension with pay, and suspension without pay or termination are subject to review by the Deputy Chief, and no recommendations are final without approval by the Chief Deputy and Sheriff.]*

## REASON FOR REPORT

Failure to maintain satisfactory and harmonious working relationship with fellow employees.

## NARRATIVE OF EVENTS GIVING CAUSE FOR ACTION
### (Include all related Reports)

See attached narrative.

[Rev. 5/17/2013]

EXHIBIT
1
1 of 2

Reporting Supervisor: _Wm. E. Sharp_ Date: _6, 6, 13_

☐ I have read the above Report of Action, and its contents have been explained to me.

☑ I understand that I may appeal this action. The appeal must be within five (5) days of this action and must be submitted in writing to employee's immediate supervisor.

**Employee:** _X Giul_ Date/Time: _6-6-13_

☐ **I have been informed of the Sheriff's final decision.** Date/Time: _____

|  | Date | Concur with Recommendation |
|---|---|---|
| Shift Commander _____ | _____ | ☐ Yes  ☐ No |
| Division Captain _____ | _____ | ☐ Yes  ☐ No |
| Division Commander _Bill Sharp_ | _6/13/13_ | ☑ Yes  ☐ No |
| Deputy Chief _____ | _____ | ☐ Yes  ☐ No |
| Chief Deputy _____ | _____ | ☐ Yes  ☐ No |
| Sheriff Robert F. Arnold _____ | | Date: _____ |

**\*\* _Notice: Refusal to sign said Report of Action can be grounds for dismissal_.**

\*\* Chief of Administration will be contacted prior to giving the employee any written documentation if the employee is to be promoted, transferred, demoted, suspended with or without pay, or terminated.

\*\* If suspended without pay, suspension will be effective from _____ through _____ .

[Rev. 5/17/2013]                                    2

EXHIBIT 1
2 of 2

*Violation of SOP No. 617 Randy Garrett*
4/6/13

Reporting Supervisor: _W___ E. Sharp___ Date: 6, 6, 13

☐ I have read the above Report of Action, and its contents have been explained to me.

☑ I understand that I may appeal this action. The appeal must be within five (5) days of this action and must be submitted in writing to employee's immediate supervisor.

**Employee:** _X G. U_____ Date/Time: 6-6-13

☐ **I have been informed of the Sheriff's final decision.** Date/Time: _____

|  | Date | Concur with Recommendation |
|---|---|---|
| Shift Commander _____ | _____ | ☐ Yes  ☐ No |
| Division Captain _____ | _____ | ☐ Yes  ☐ No |
| Division Commander _Bill Sharp_ | 6/13/13 | ☑ Yes  ☐ No |
| Deputy Chief _Ci Renteria_ | 06/06/2013 | ☐ Yes  ☑ No Termination |
| Chief Deputy _Randy Petrini_ | 6/6/13 | ☑ Yes  ☐ No |
| Sheriff Robert F. Arnold _____ |  | Date: _____ |

**\*\* _Notice: Refusal to sign said Report of Action can be grounds for dismissal_.**

\*\* Chief of Administration will be contacted prior to giving the employee any written documentation if the employee is to be promoted, transferred, demoted, suspended with or without pay, or terminated.

\*\* If suspended without pay, suspension will be effective from _____ through _____ .

[Rev. 5/17/2013]                    2

EXHIBIT 2



# Rutherford County Sheriff's Office

**HAND DELIVER**

**ROBERT F. ARNOLD**
SHERIFF

June 14, 2013

Mr. Jim Tramel
6450 Lascassas Road
Lascassas, Tennessee 37085

Dear Mr. Tramel,

A Report of Action was issued on you by Major Bill Sharp on June 6, 2013 regarding your failure to maintain satisfactory and harmonious working relationships with fellow employees.

Major Sharp recommended that you be transferred to another division within the Sheriff's Office.

Deputy Chief Gammon reviewed the Report of Action and recommended that your employment with the Rutherford County Sheriff's Office be terminated. Chief Deputy Garrett concurred with Deputy Chief Gammon's recommendation and further added that you violated Standard Operating Procedure No. 617.

You were advised that you had five (5) days to appeal the recommendation. June 13, 2013 was the final day that you could appeal the recommendation. I have not received any notice of appeal from you in writing as of June 14, 2013.

Therefore, I concur with the termination recommendation. Your employment with the Rutherford County Sheriff's Office is terminated immediately.

Sincerely,

Robert F. Arnold, Sheriff          1406 ''3

EXHIBIT
**3**
1 of 3

940 NEW SALEM HWY. • MURFREESBORO, TN 37129 • PHONE 615/898-7720 • www.rutherfordcountytn.gov/so

_Violation of SOP No 617_ _Raul Grant_
4/6/13

Reporting Supervisor: _Wara E. Sharp_  Date: _6, 6, 13_

☐ I have read the above Report of Action, and its contents have been explained to me.

☑ I understand that I may appeal this action. The appeal must be within five (5) days of this action and must be submitted in writing to employee's immediate supervisor.

**Employee:** X _Oji4f_  Date/Time: _6-6-13_

☐ **I have been informed of the Sheriff's final decision.**  Date/Time: _____

|  | Date | Concur with Recommendation | |
|---|---|---|---|
| Shift Commander _____ | _____ | ☐ Yes | ☐ No |
| Division Captain _____ | _____ | ☐ Yes | ☐ No |
| Division Commander _Bru Sharp_ | _6/13/13_ | ☑ Yes | ☐ No |
| Deputy Chief _Q. Garnoo_ | _06/06/2013_ | ☐ Yes | ☑ No Termination |
| Chief Deputy _Ranx Druit_ | _6/6/13_ | ☑ Yes | ☐ No |
| Sheriff Robert F. Arnold _Robt F Hall_ | Date: _6/14/13 1406_ | | |

** **_Notice: Refusal to sign said Report of Action can be grounds for dismissal_.**

** Chief of Administration will be contacted prior to giving the employee any written documentation if the employee is to be promoted, transferred, demoted, suspended with or without pay, or terminated.

** If suspended without pay, suspension will be effective from _____ through _____
_____.

[Rev. 5/17/2013]  2

EXHIBIT
3
2 of 3
tabbies

# SEPARATION NOTICE

1. Employee's Name: Jim     Tramel     2. SSN 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
                    *First*         *Middle Initial*     *Last*

3. Last Employed: From: 12/16/97 to 06/14/13    Occupation: Detective
                  *(mm/dd/yy)*        *(mm/dd/yy)*

4. Where was work performed? Rutherford County Sheriff's Office, 940 New Salem Hwy, M'boro, TN 37129

5. Reason for Separation: ☐ Lack of Work    ☑ Discharge    ☐ Quit

If lack of work, indicate if layoff is    ☐ Permanent    ☐ Temporary

If temporary, when do you expect to recall this individual? Date _____
                                             *(mm/dd/yy)*

If temporary, report any vacation pay that will be paid.   Week Ending Date _____    Amount _____
                                                      *(mm/dd/yy)*

If layoff is underlined indefinite vacation pay should not be reported.

If other than lack of work, explain the circumstances of this separation:

Terminated

Employer's Name:   Rutherford County Sheriff's Office

Address where additional information may be obtained:

940 New Salem Hwy

City: Murfreesboro    State: TN    Zip Code: 37129

Employer's Telephone Number: (615) 904-3172
                   *(Area Code)*   *(Number)*    *(Ext)*

Employer's E-Mail Address   jrussell@rcsotn.org

## EMPLOYER'S ACCOUNT NUMBER

06502913

*(Number shown on State Quarterly Wage Report (LB-0851) and Premium Report (LB-0456)*

I certify that the above worker has been separated from work and the information furnished herein is true and correct. **This report has been handed to or mailed to the worker.**

Signature of Official or Representative of the Employer who has first-hand knowledge of the separation.

Title of Person Signing

Administrative Chief Deputy

Date Completed and Released to Employee

06/14/13
*(mm/dd/yy)*

## NOTICE TO EMPLOYER

Within 24 hours of the time of separation, you are required by Rule 0800-09-01 of the Tennessee Employment Security Law to provide the employee with this document, properly executed, giving the reasons for separation. If you subsequently receive a request for the same information on LB-0810, please give complete information in your response.

## NOTICE TO EMPLOYEE

IF YOU ARE FILING A CLAIM FOR UNEMPLOYMENT INSURANCE BENEFITS <u>BY TELEPHONE OR INTERNET</u> YOU MAY BE INSTRUCTED TO MAIL OR FAX THE SEPARATION NOTICE TO THE TENNESSEE CLAIMS CENTER. IF YOU ARE FILING A CLAIM FOR UNEMPLOYMENT INSURANCE BENEFITS <u>IN-PERSON</u> PLEASE TAKE THIS NOTICE TO THE LABOR AND WORKFORCE DEVELOPMENT OFFICE.

LB-0489 (Rev. 08-09)                      RDA 0063

EXHIBIT 3